UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

TRAVIS PIERRE STEWART,                              Case No.: 3:13-cv-02147-AC

                           Plaintiff,              OPINION AND ORDER

       v.

ROCK TENN CP, LLC, aka ROCK TENN,
and ROCK-TENN SERVICES, INC.,
aka ROCK TENN,

                           Defendants.

_____

ACOSTA, Magistrate Judge:

*Introduction*

       Plaintiff Travis Pierre Stewart ("Stewart"), a Washington resident, brings this action against

defendant Rock Tenn CP, LLC and Rock Tenn Services, Inc (collectively "Rock Tenn").  Stewart

alleges Rock Tenn violated Title VII of the Civil Rights Act of 1964  ("Title VII"), 42 U.S.C. §§

Page 1 - OPINION AND ORDER                                              {PGR}

2000e through 2000e-17; the Civil Rights Act of 1866 ("CRA"), 42 U.S.C. § 1981; the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601-2654; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101-12213; and Oregon state law prohibiting employment discrimination. Stewart seeks declaratory, injunctive, and monetary relief, including attorney's fees and costs.

Rock Tenn moves to dismiss Stewart's first, second, third, and eighth claims for relief (the "federal claims"). Rock Tenn argues the federal claims in the Complaint are untimely because Stewart failed to establish he commenced his action within 90 days of receiving a Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC"). Similarly, Rock Tenn argues Stewart's fifth and ninth claims (the "state claims") in the Second Amended Complaint fail to state a claim because Stewart did not establish he commenced the action within 90 days of receiving a Notice of Right to Sue from the Oregon Bureau of Labor and Industry ("BOLI"). Rock Tenn does not move to dismiss Stewart's fourth, sixth, and seventh claims. Stewart opposes Rock Tenn's motion to dismiss and moves for leave to amend his complaint. In addition, Stewart requests that the court toll the commencement of the 90-day filing period for the federal claims and apply federal procedural rules to preserve his state claims.

The court grants Rock Tenn's Motion to Dismiss because Stewart did not plead facts sufficient to establish the timeliness of his claims or raise a colorable argument for tolling the ninety-day filing deadline. Furthermore, the court denies Stewart's motion to amend without prejudice because the Proposed Supplemental and Third Amended Complaint ("PAC") fails to cure the defects in the Second Amended Complaint.

*Background*

Before his termination, Stewart, an African-American, worked for Rock Tenn. (Second Am. Compl. ¶ 9, Dkt. No. 32.) Starting on or about December 2011, Stewart's shift supervisor allegedly referred to Stewart using racial slurs, including calling him "Buckwheat" and "Radio," a reference to a developmentally disabled African-American character from a movie. (*Id.* at ¶ 11, 22.) Rock Tenn suspended Stewart in February and June 2012, allegedly for opposing his supervisor's racial discrimination and for taking medical leave to address his severe allergies. (*Id.* at ¶ 14, 27.) In September 2012, Stewart alleges Rock Tenn discharged him because he is disabled, because he took protected medical leave, and in retaliation for raising concerns about Rock Tenn's discriminatory practices. (*Id.* at ¶ 26.) According to Stewart, Rock Tenn stated the reason for his discharge was excessive absences. (*Id.*) In September 2012, Stewart provided Rock Tenn with documentation of his medical leave but was not reinstated until February 2014. (*Id.* at ¶ 28.)

In response, Stewart co-filed a complaint with the EEOC and BOLI alleging discrimination and retaliation. (*Id.* at ¶ 7.) Stewart claims he received a Notice of Right to Sue from the EEOC authorizing him to file this action. (*Id.* at ¶ 8.) Stewart filed his original complaint in federal court on December 6, 2013. (Compl., Dkt. No. 1.) According to Stewart, he filed the original complaint within ninety days of receiving a Notice of Right to Sue from BOLI. *Id.* On June 10, 2014, he filed his Second Amended Complaint, which Rock Tenn now moves to dismiss in part. (Second Am. Compl.)

*Legal Standard*

I.  Rule 12(b)(6) Motion to Dismiss

A well-pleaded complaint must have a "short and plain statement of the claim showing that

the pleader is entitled to relief." FED. R. CIV. P. 8(a) (2014). A motion pursuant to FRCP 12(b)(6) should be granted if the allegations in the complaint are insufficient to state a claim for relief. FED. R. CIV. P. 12(b)(6) (2014). In *Bell v. Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Court explained the necessity of including sufficient facts in the pleading to give proper notice of the claim and its basis: "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (alteration omitted). With this in mind, the Court noted "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Later, in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009), the Court illuminated two principles underlying its decision in *Twombly*. First, the proposition that a court must accept all allegations in a complaint does not force a court to accept as true all legal conclusions set forth a pleading. *Id.* at 678. Second, the complaint must contain a plausible, not merely possible, claim for relief. *Id.* at 679. The court clarified that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir. 2007)). Further, the court concluded, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief." *Id.*

{PGR}

On a motion to dismiss for failure to state a claim, the court must take as true all allegations of material fact and construe them in the light more favorable to the nonmoving party. *Am. Family Ass'n, Inc. v. City & County of S.F.*, 277 F.3d 1114, 1120 (9th Cir. 2002). The court's review is limited to the face of the complaint, any documents referenced in the complaint, and those matters which the court may properly take judicial notice. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Otherwise, as a general rule, a district court may not consider any material outside the pleadings when ruling on a 12(b)(6) motion to dismiss. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).

## II. Rule 15 Motion to Amend

After amending a pleading once as a matter of course, a plaintiff may amend his "pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a) (2013). "The court should freely give leave when justice so requires." *Id.* "Although the rule should be interpreted with 'extreme liberality,' leave to amend should not be granted automatically." *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). A trial court may deny the motion if permitting amendment would prejudice the opposing party, produce an undue delay in litigation, result in futility for lack of merit, is sought by plaintiffs in bad faith or with a dilatory motive, or the plaintiffs have filed numerous amended complaints. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). Prejudice to the opposing party carries the "greatest weight" in determining whether to deny leave to amend, but futility alone may justify denying leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Whether to grant leave to amend lies within the sound discretion of the trial court. *Webb*, 655 F.2d at 979. In exercising

this discretion, however, the court "must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Id.*

*Discussion*

I. Motion to Dismiss

The court first considers Rock Tenn's motion to dismiss for failure to state a claim. Rock Tenn argues the Complaint fails to establish Stewart met the timeliness requirement. Thus, in deciding the motion to dismiss, the court must determine whether the Complaint alleges sufficient facts that, when taken as true, establish the timeliness of Stewart's pleadings.

A motion to dismiss based on the timeliness of the complaint may be granted "only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010); *see also Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204 (9th Cir. 1995) ("a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim"). Additionally, such a motion can be granted only if the allegations in the complaint could not establish the statute of limitations was tolled. *Supermail*, 68 F.3d at 1206. Because tolling is a "fact-intensive test," it is usually not appropriate for consideration in a motion to dismiss and usually reserved for summary judgment or trial. *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1277 (9th Cir. 1993). However, tolling can be considered in a motion to dismiss if the plaintiff fails to meet the burden of alleging sufficient facts that give rise to tolling. *See Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993) (noting that the "burden does not arise only after a motion to dismiss; rather the plaintiff 'must plead with particularity the circumstances surrounding the concealment and state facts showing his due diligence in trying to uncover the facts'"). Ultimately, a court must decide "whether the complaint,

{PGR}

liberally construed in light of [its] 'notice pleading' system, adequately alleges facts showing the *potential* applicability of the equitable tolling doctrine." *Cervantes*, 5 F.3d at 1277 (emphasis original).

In deciding a motion to dismiss, a court may consider a document that is not attached to the complaint if: (1) the plaintiff's claim relies on that document; and (2) its authenticity is not challenged by any party. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) ("We therefore hold that a district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies."), *superseded by statute on other grounds as recognized in Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006). Under the *Parrino* rule, the court's consideration of these documents does not convert a motion to dismiss into a motion for summary judgment. *Parrino*, 146 F.3d at 706 n.4 (citing *Pension Benefit Guaranty Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993)); *cf. Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (stating that "[u]nder the 'incorporation by reference' rule of [the Ninth] Circuit, a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment"). Furthermore, a claimant cannot survive a motion to dismiss by "deliberately omitting references to documents upon which their claims are based." *Parrino*, 146 F.3d at 706; *see Boon v. Union Pac. R. Co.*, No. 03:10-cv-01044-HU, 2011 WL 7452732, at *5 (D. Or. Sept. 30, 2011) ("a plaintiff may not evade dismissal by purposefully omitting the date of a right-to-sue letter from their complaint or by failing to attach a copy of the letter to the complaint").

In this case, the court must consider Stewart's federal and state claims separately because different time limitations may apply. That is, "[t]here may be two [right-to-sue] letters mailed on

{PGR}

separate days, providing different 90-day periods." *Miller v. Aqua Glass Inc.*, Civ. No. 07-3088-CL, 2010 WL 538230, at *3 (D. Or. Feb. 12, 2010); *see Sharer v. Ore.*, 481 F.Supp.2d 1156, 1164 (D. Or. 2007) (finding that co-filing a BOLI and EEOC complaint requires the court to apply two different ninety-day periods if the claimant receives BOLI and EEOC notices on different dates); *see also Jensen v. Sweet Home Lodge No. 1972 of Benevolent and Protective Order of Elks of U.S.*, Civ. No. 06-6329-AA, 2007 WL 3051657, at *2 (D. Or. Oct. 16, 2007) (finding that "a joint filing with the EEOC and BOLI does not eliminate the limitations period under Or. Rev. Stat. § 659A.875(2)").

### A. Federal Claims

Prior to commencing a Title VII or ADA action in federal court, a claimant must file a charge of discrimination with the EEOC. *Nelmida v. Shelly Eurocars, Inc.* 112 F.3d 380, 383 (9th Cir. 1996). If the EEOC declines to pursue the charge on the claimant's behalf within one-hundred-eighty days of the filing of the charge, the EEOC will issue a right-to-sue letter. Upon issuance of the right-to-sue letter, claimant has ninety days to file a civil action in court. *Id.*; 42 U.S.C. § 2000e-5(f)(1) (Title VII claims); 42 U.S.C. § 12117(a) (ADA claims). This ninety-day period "acts as a statute of limitations," which is "subject to waiver as well as equitable tolling." *Jones*, 2007 WL 2808562, at *2 (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982)). To calculate the ninety-day period, courts look to "the date on which a right-to-sue letter arrive[s] at the claimant's address of record." *Payan v. Aramark, Mgmt. Serv., Ltd.*, 495 F.3d 1119, 1122 (9th Cir. 2007). When the date of receipt is unknown, courts estimate the date "based on the date of EEOC disposition and issuance of notice, with some compensation for mailing time." *Id.* The Ninth Circuit has adopted a rebuttable presumption that a claimant receives a right-to-sue letter within three days of its issuance. *Id.* at 1124-26.

{PGR}

When considering the face of the Complaint in this case, it is clear Stewart has not pleaded sufficient facts to establish the timeliness of his federal claims. Stewart alleges he filed his original complaint after receiving a Notice of Right to Sue from the EEOC. (Second Am. Compl. ¶¶ 7-8.) Stewart filed the original complaint on December 6, 2013. (Compl., Dkt. No. 1.) Stewart then filed the Second Amended Complaint now at issue on June 10, 2014. (Second Am. Compl.) Because the Second Amended Complaint relates back to the original complaint, the effective filing date of the Second Amended Complaint is December 6, 2013.

An amended pleading, i.e., an amended complaint, relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading." FED. R. CIV. P. 15(1)(B). Here, Stewart does not include factual allegations in the Complaint regarding the date which he received the Notice of the Right to Sue. He also did not attach the actual EEOC notice as an exhibit to his complaint. Without any factual allegations regarding the date in which he received the EEOC notice, the court is unable to calculate whether Stewart filed his original complaint or Second Amended Complaint within ninety days of receiving the EEOC notice. Stewart cannot avoid dismissal by omitting information necessary for the court to analyze its timeliness.

Moreover, even when looking beyond the face of the complaint, the court cannot establish that Stewart's claims were filed in a timely manner. Although Stewart did not attach the EEOC right-to-sue letter to the Second Amended Complaint, Rock Tenn attached it to a declaration supporting the motion to dismiss. (Karpinski Decl. Ex. 2, Dkt. No. 41.) The court may consider the EEOC letter because the timeliness of Stewart's federal claims depends on that letter and because neither party has challenged its authenticity. See Pl.'s Resp. to Def.'s Mot. to Dismiss, at 3, Dkt. No.

{PGR}

46 ("[O]n or about June 25, 2013, the EEOC mailed Plaintiff the document entitled 'Dismissal and Notice of Rights.'"). The EEOC letter is addressed to Stewart and is dated June 25, 2013. (Karpinski Decl. Ex. 2.) Applying the Ninth Circuit's three-day rule, the court must presume Stewart received the EEOC Notice of Right to Sue letter on June 28, 2013. The EEOC letter includes a paragraph titled "NOTICE OF SUIT RIGHTS," which reads, in part:

> This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u>** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

*Id.* (emphasis original). Accordingly, Stewart was required to file his federal claims by September 26, 2013. Because he filed his original complaint on December 6, 2013, Stewart missed the deadline to file his federal claims by seventy-two days.

Furthermore, the Complaint does not allege any circumstances that support tolling the limitations period. Before a court can consider the merits of a request for tolling, a plaintiff must first allege facts giving rise to tolling. Stewart requests that the court apply the doctrine of equitable tolling, but fails to allege any supporting facts in the Complaint. While application of the equitable tolling doctrine is highly fact-based and often reserved for summary judgment or trial, Stewart nevertheless had the burden of alleging facts that would make tolling a possibility. Because he failed to meet that burden, the court cannot entertain the possibility of tolling to overcome the Complaint's failure to meet the timeliness requirements. Although the court concludes Stewart's claims should be dismissed, Rock Tenn has not demonstrated that amending Stewart's claims would be futile, or that application of the doctrine of equitable tolling is foreclosed as a matter of law. Therefore, the court dismisses without prejudice Stewart's first, second, third, and eighth claims for relief.

{PGR}

*B. State Claims*

Rock Tenn next moves to dismiss Stewart's state-law claims for relief because Stewart failed to file them in a timely manner. Stewart argues his claims are timely under relevant state law and, to the extent they are not, urges the court do apply federal law to find he filed within the administrative limitations period.

1. Stewart's State-Law Claims are Time-barred Under State Procedural Rules

Before the court can address the merits of whether Stewart's claims should be dismissed as untimely, it must determine the appropriate limitations period. Rock Tenn argues that the court should apply the state statute of limitations to find Stewart's claims time-barred. Stewart contends that because his claims are in federal court subject to the court's supplemental jurisdiction, as opposed to diversity jurisdiction, the court should apply the Federal Rules of Civil Procedure and adjudge his claims timely.

To state-law claims before the court pursuant to its diversity jurisdiction, the court applies federal procedural law and state substantive law. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). However, the Ninth Circuit and the Supreme Court have not clearly established a rule governing which procedural rules apply to state law claims in federal court pursuant to its supplemental jurisdiction. *See Montgomery v. City of Portland Fire & Rescue*, Civ. No. 08-1006-MO, 2009 WL 1329850, at *4 (D. Or. May 8, 2009) ("[T]he Supreme Court has not directly addressed which rule applies for pendent state law claims brought under supplemental jurisdiction with a federal question."). However, the principles identified in the existing case law support applying state law on substantive issues and federal law on procedural issues. *See Nathan v. Boeing Co.*, 116 F.3d 422, 423 (9th Cir. 1997) (noting that "courts apply the principles of *Erie* to pendent state law claims")

Page 11 - OPINION AND ORDER                                                                    {PGR}

(full citation omitted); *Hanna v. Plumer*, 380 U.S. 460, 471 (1965). Applying those principles, the court concludes it is appropriate to apply state statutes of limitation to determine whether Stewart's state-law claims are timely.

Federal courts have determined statute of limitation and timeliness issues are "substantive" for *Erie* purposes. In fact, the Ninth Circuit has declared that, "[s]tatutes of limitations, which dictate the life of state causes of action, are too intimately connected with the substance of the state-created right to be disregarded by the federal courts." *Montgomery*, 2009 WL 1329850, at *4 (citing *Harvey's Wagon Wheel, Inc. v. Van Blitter*, 959 F.2d 153, 157 (9th Cir. 1992)). As a result, "[e]ven though Rule 4(m) gives the court authority to extend time to effect service of a complaint, Rule 4(m) does not change the substantive time limitation provisions of state law." *Pelster ex rel Boyer v. Walker*, 185 F. Supp. 2d 1174, 1179 (D. Or. 2001). This District has consistently applied state procedural law to pendant state-law claims, and the court sees no reason to depart from that practice in this case. *See id.; Montgomery*, 2009 WL 1329850, at *5 (finding that "for the purposes tolling the statute of limitations for pendent state law claims, the commencement of a suit is determined by state law"); *Miller*, 2010 WL 538230, at *3 (noting that "pendent state law claims are controlled by Oregon law for tolling statute of limitations").

Moreover, applying a federal rule to dictate the limitations period in this case would frustrate a state-created right and could lead to forum shopping. If the court declined to apply the Oregon statute of limitations, it would lead to the unusual result of allowing a state-law claim to proceed despite the fact that would be dismissed as untimely if it were brought originally in state court. This, in turn would lead to forum shopping by plaintiffs seeking to bring such a claim. Because forum shopping is one of the hallmark considerations in the *Erie* analysis, the court finds it a persuasive

Page 12 - OPINION AND ORDER                                                                                    {PGR}

guide in concluding that the state statute of limitations is the appropriate rule to apply in this case. Therefore, the court will rely on Oregon law to determine whether Stewart's claims are time-barred.

A claimant who has been subjected to unlawful employment practices in Oregon may also file a complaint with BOLI. OR. REV. STAT. § 659A.820; *Miller*, 2010 WL 538230, at *3. However, unlike federal employment discrimination claims, a claimant need not file a charge with BOLI prior to commencing a civil action under Oregon law. OR. REV. STAT. § 659A.870(2) ("The filing of a complaint under ORS 659A.820 is not a condition precedent to the filing of any civil action."). If a claimant files a complaint with BOLI and receives a right-to-sue letter, the claimant "must commence a civil action under ORS 659A.885 within 90 days after a 90-day notice is mailed to the complainant." OR. REV. STAT. § 659A.875(2). Under Oregon law, a civil action commences when the summons is served on the defendant. OR. REV. STAT. § 12.020(1) (stating an action is deemed commenced when filed *and* served on the defendant). If a claimant serves the defendant before sixty days have passed from the date the complaint is filed, then date of commencement relates back to the filing date. OR. REV. STAT. § 12.020(2).

Stewart filed his original complaint alleging state claims on December 6, 2013. (Compl., Dkt. No. 1.) Stewart filed the Second Amended Complaint on June 10, 2014. (Second Am. Compl.) As with Stewart's federal claims, the state claims relate back to the date Stewart filed his original complaint because all his claims arise out of the same nucleus of operative facts. Therefore, the effective filing date of the Second Amended Complaint is December 6, 2013. However, Stewart does not include any factual allegations in the Second Amended Complaint regarding the date on which he received BOLI's Notice of Right to File Suit. Although Stewart alleges in the Second

Amended Complaint that "Plaintiff filed his original complaint within ninety days of the date BOLI issued a Notice of Right to Sue" (Second Am. Compl. ¶ 8.), this is a legal conclusion that the court need not accept as true at this stage of the case.   He also did not attach the actual BOLI notice. Without any factual allegations regarding the date on which he received the BOLI notice, the court cannot calculate whether Stewart filed his Second Amended Complaint within ninety days of receiving the BOLI notice. As previously discussed, the Second Amended Complaint cannot survive a motion to dismiss merely because Stewart omitted the information the court needs to make such calculation.

Looking beyond the face of the Second Amended Complaint, the court cannot conclude as a matter of law that Stewart's claims are timely.   Rock Tenn attached a copy of the BOLI Notice of Right to File Suit to a declaration supporting its Motion to Dismiss. (Karpinski Decl. Ex. 1, Dkt. No. 41.)   The court may consider the BOLI notice without turning this motion to dismiss into summary judgment because the timeliness of Stewart's state claims depends on that letter and because neither party has challenged its authenticity. The BOLI notice is addressed to Stewart and is dated October 9, 2013. (Karpinski Decl. Ex. 1.) Thus, Stewart was required to commence his suit by January 7, 2014. Although Stewart filed the Complaint well before the January 7 deadline, he did not serve Rock Tenn with the Complaint until June 13, 2014.   In order to meet the commencement requirements, Stewart was required to file within ninety days and serve Rock Tenn either before January 7 or within sixty days after filing the Complaint. Thus, for his claims to be timely, Stewart was required to serve Rock Tenn by February 4, 2014. Stewart missed the February 4 deadline by 129 days. Accordingly, Stewart's state claims are time-barred under Oregon law, and

the court dismisses his state-law claims with prejudice.

## II.  Motion for Leave to Amend

In response to Rock Tenn's motion to dismiss, Stewart filed a Motion for Leave to File a Supplemental and Third Amended Complaint.  (Pl.'s Mot. For leave to File a Supp. Third Am. Compl., Dkt. No. 43.)  Stewart "seeks to Amend the Second Amended Complaint to reflect that he met all administrative requirements and that he filed his Complaint within 90 days of his receipt of the EEOC notice of right to sue dated September 12, 2013, and within 90 days of the date of the BOLI notice of right to sue." (*Id.* at ¶ 8.)  Stewart also seeks to add supplemental claims related to events that occurred after the Complaint was filed.  Specifically, Stewart adds allegations that he suffered from allergies in June-July 2014 and sought medical treatment.  (*Id.* at ¶ 29.)  He alleges Rock Tenn suspended him on July 7, 2014, because Stewart was disabled, because he invoked his right to take medical leave, and because he resisted Rock Tenn's discriminatory employment practices.  (*Id.* at ¶ 30-31.)  Rock Tenn opposes the motion on the ground that it would be futile because the supplemental claims do not relate back to the filing-date of the original complaint and because the proposed Amended Complaint does not cure the Complaint's defects.

The court has broad discretion to grant a plaintiff's motion for leave to amend pursuant to FED. R. CIV. P. 15(a).  Nevertheless, the court may deny leave to amend where permitting the amendment:  (1) would cause prejudice the opposing party; (2) would result in undue delay in litigation; (3) would be futile; (4) is sought by plaintiffs in bad faith; or (5) the plaintiffs have filed numerous amended complaints.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  To avoid denial due to futility, the PAC must satisfy two requirements.  First, the filing date must relate back to the date

Stewart filed his original complaint. Second, it must include sufficient allegations to cure the defects in the Second Amended Complaint.

### A. The Amended Complaint Relates Back.

Under FED. R. CIV. P. 15(1)(B), an amended complaint relates back if "the amendment asserts a claim or defense that arose out of conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading." With regard to new claims, a court cannot consider new allegations under Title VII that were not raised in the original EEOC charge unless they "encompass any discrimination like or reasonably related to the allegations of the EEOC charge." *Oubichon v. N. Am. Rockwell Corp.*, 482 F.2d 569, 571 (1973); *Sosa v. Hiraoka*, 920 F.2d 1451, 1456-57 (9th Cir. 1990) (analyzing the plaintiff's EEOC charge to determine whether the claims were "like or reasonably related"). Factors a court may consider in determining whether the new allegations are like or reasonable related to the previous allegations include "dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charged, and any locations at which discrimination is alleged to have occurred," as well as "the extent that those claims are consistent with the plaintiff's original theory of the case." *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1100 (9th Cir. 2002).

The allegations in Stewart's Proposed Third Amended Complaint ("the PAC") relate back to the original complaint because they raise similar claims concerning discriminatory conduct by Rock Tenn in February, June, July, and August of 2012. (Supplemental and Third Am. Compl. ("PAC") ¶¶ 1-28, Dkt. No. 43.) The time frame and nature of the allegations in both complaints is the same. (*Compare* Compl. for Employment Discrimination, Dkt. No. 1 *with* the PAC, Dkt. No.

43 (alleging that Stewart's supervisors referred to him using derogatory names and suspended him for taking medical leave and filing a complaint about his supervisor's use of racial slurs).) Moreover, his new claims and factual allegations are not inconsistent with the theories advanced in the original complaint and subsequent amended complaints. Because Stewart's claims relate back to his original complaint, they are not automatically time-barred. The court next must determine whether Stewart's PAC cures the defects contained in his previous pleadings.

### B. The PAC Does Not Cure the Defects of his Prior Pleadings

Having dismissed Stewart's state claims with prejudice, the court considers Stewart's motion for leave to amend the Complaint only with regard to his federal claims. In order for the PAC to cure the defects of the Second Amended Complaint, it must either (1) plead facts that establish the timeliness of Stewart's claims, or (2) plead sufficient facts to give rise to the possibility of tolling. Stewart's PAC does neither, and thus fails to cure the defects in his Second Amended Complaint.

First, Stewart's PAC does not plead facts which establish the timeliness of his original complaint. Stewart amended the Complaint to include the following allegation: "All administrative requirements have been met, and Plaintiff filed his Complaint within 90 days of his receipt of the EEOC notice of right to sue dated September 12, 2013, and within 90 days of the BOLI notice of the right to sue dated October 9, 2013." (PAC at ¶ 8.) Looking at the face of the complaint and relying on the September 12 date Stewart alleges, the court calculates he filed his original complaint within eighty-five days, which is within the ninety-day deadline.

However, looking beyond the face of the complaint, the court cannot affirmatively determine that the original complaint was timely. Although Stewart did not include the September 12 EEOC

letter in the PAC, he attached the September 12 letter to a declaration supporting his motion for leave to amend.[1]  (Decl. Of Travis Pierre Stewart Ex B, Dkt. No. 41.)  The September 12, 2013 EEOC letter on which Stewart's PAC relies is addressed to "Ted Corrales," not to Stewart.  *Id.*  Stewart cannot establish his claim was timely by relying on a letter addressed to someone else.  Stewart also attached the June 25, 2013 letter to his declaration, which is addressed to him and provides clear notice that he must file his claim within ninety days.  (Stewart Decl. Ex. A.)  The two letters conflict with Stewart's factual allegations in the PAC and undermine his contention that his claims are timely.

Furthermore, the PAC does not contain allegations that would give rise to a plausible argument in favor of tolling.  Before a court can consider the merits of a request for tolling, the plaintiff must allege facts that would make tolling a possibility.  Stewart failed to allege such facts in the PAC.  Because the PAC fails to cure the pleading defects of the Second Amended Complaint, the court denies the motion for leave to amend.  However, the court does so without prejudice to Stewart's ability to amend in the future.

A statute of limitations is subject to the doctrine of equitable tolling, which courts apply "in extreme cases . . . in a case-by-case analysis."  *Scholar v. Pacific Bell*, 963 F.2d 264, 267 (9th Cir. 1992).[2]  In *Gates v. Georgia-Pacific Corp.*, 492 F.2d 292, 295 (9th Cir. 1974), the Ninth Circuit

---

[1] The court may consider the EEOC letters because the timeliness of Stewart's federal claims depends on the letters and because neither party has challenged their authenticity.  *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (holding that "a district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies").

[2] On April 23, 2015, the U.S. Supreme Court ruled in the case of *U.S. v. Wong*, 575 U.S. ___, 2015 WL 1808750 (2015), which held that a statute of limitations is subject to equitably tolling so long as the statute is not "jurisdictional"  Pursuant to that ruling, the court now concludes 42 U.S.C.

applied this doctrine in a case where "as a result of the Commissioner's error, appellee was confused, and under the circumstances, acted with all of the diligence and promptness which could be expected." The Ninth Circuit also recognized the potential applicability of this doctrine where "the government's deliberate failure to provide [plaintiff] with accurate information" resulted in the plaintiff's "ignorance of the event triggering the limitations period." *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1207-08 (9th Cir. 1995).

In *Josephs v. Pac. Bell*, 443 F.3d 1050, 1061 (9th Cir. 2006) (*amended*), the Ninth Circuit provided significant guidance for when a pro se plaintiff's reliance on misinformation derived from a governmental actor can give rise to equitable considerations. There, the plaintiff alleged he was terminated from his employment due to his mental disability in violation of the ADA. *Id.* at 1061. The plaintiff went to the EEOC office and, acting *pro se*, completed the paperwork necessary to file a charge of discrimination. *Id.* at 1058. An EEOC employee told the plaintiff "to have his attorney contact the EEOC after he retained counsel." *Id.* The EEOC employee never filed the plaintiff's charge or otherwise advanced his claim. *Id.* Relying on the EEOC employee's incorrect representation that he could not file a charge *pro se*, he retained counsel. However, plaintiff's attorney was unsuccessful in his attempts to file a timely charge on plaintiff's behalf. *Id.* The plaintiff filed a complaint in federal district court, where a judgment was entered in plaintiff's favor after a jury trial. *Id.* The defendant moved for a judgment as a matter of law in part because the plaintiff's claims were untimely. *Id.* The trial judge denied the defendant's motion, and the Ninth

---

§ 2000e-5(f)(1) and 42 U.S.C. § 12117(a) may be tolled because they are mundane statutes of limitations which speak "only to a claim's timeliness, not to [the] court's power." *Wong*, 575 U.S. ___, at *6. Moreover, those statutes do not "in any way cabin [the court's] usual equitable powers." *Id..* Therefore, the federal statutes of limitation at issue in this case may be equitably tolled.

Circuit affirmed. *Id.* The Ninth Circuit held that filing a timely charge with the EEOC is "not a jurisdiction prerequisite to filing suit, but is a requirement subject to equitable doctrines such as waiver and tolling." *Id.* at 1061. Moreover, the court determined that a plaintiff is entitled to equitable tolling where he:

> (1) diligently pursued his claim; (2) was misinformed or misled by the administrative agency responsible for processing his charge; (3) relied in fact on the misinformation or misrepresentations of that agency, causing him to fail to exhaust his administrative remedies; and (4) was acting pro se at the time.

*Id.* Ultimately, the court determined that the plaintiff was equitably excused from exhausting his administrative remedy of filing a timely EEOC charge because he detrimentally relied on misinformation given to him by an EEOC employee. *Id.* Although the court in *Josephs* was applying an equitable exception to the requirement a plaintiff exhaust administrative remedies, the court finds that the principles discussed in that case are equally applicable to cases where, as here, the plaintiff failed to comply with the statute of limitations due to reliance on misinformation supplied by an EEOC employee.

Here, the court concludes that Stewart is not legally or factually foreclosed from pleading facts which give rise to tolling. In his declaration, Stewart states that after he received the Notice of Rights Letter dated June 25, 2013, he called the EEOC and was told that the document merely indicated his case was closed and that he would need to work with the EEOC San Francisco office in the future. When Stewart called the San Francisco office, Stewart was told that his right-to-sue letter would be sent to him in the near future along with his FOIA file. Fewer than ninety days after he received the Notice of Rights Letter, Stewart received a letter addressed to Ted Corrales which, unlike the June 25, 2013 letter, was titled "Notice of Right to Sue." (Stewart Decl. Ex. 2.) Stewart

alleges that based on the conversation he had with the EEOC representatives, he was under the impression that he needed a different "right-to-sue" letter prior to commencing his action. *Id.* Stewart received a "right-to-sue" letter addressed to Ted Corrales on September 12, 2013, and, believing it constituted notice of his right to sue, immediately began the process of filing his claims in this court. *Id.* at 3.

These facts, if alleged in an amended complaint, could plausibly give rise to equitable tolling under *Josephs* because: (1) Stewart diligently pursued his claim; (2) he was misinformed by an EEOC employee regarding the legal effect of the July 25, 2013 Notice of Rights Letter; (3) he relied on that the misinformation, which caused the statute of limitations to run; and (4) at the time, Stewart was *pro se*. The court is not convinced by Rock Tenn's argument that equitable tolling is inappropriate because the Notice of Rights letter was clear and unambiguous. First, to the extent the first Notice of Rights letter was clear and unambiguous, that clarity became muddled when Stewart detrimentally relied on the EEOC's misrepresentations that a second letter would be forthcoming to commence ninety-day filing period. Second, the court is not convinced Stewart was unreasonable in waiting to file until after he received the second right-to-sue letter. Given the EEOC's representations, it was reasonable to believe a second letter was coming. Despite the fact the second letter was addressed to "Ted Corrales," its arrival was consistent with Stewart's expectations of how the claims process would proceed.

The court cannot authoritatively comment on whether Stewart is entitled to equitable tolling under the *Josephs* rule, as he does not allege facts in his PAC which would give rise to its application. However, it is not impossible for Stewart to do so. Although the court now denies

Stewart's Motion for Leave to Amend because the PAC fails to correct the deficiencies in the Second Amended Complaint, amending Stewart's claims to adequately allege facts which give rise to equitable tolling is not impossible. Therefore, the court will deny Stewart's Motion without prejudice to file a similar motion in the future.

### Conclusion

For the aforementioned reasons, Rock Tenn's Motion to Dismiss (Dkt. No. 39) is GRANTED. Stewart's first, second, third, and eighth claims for relief are dismissed without prejudice; his fifth and ninth claims for relief are dismissed with prejudice; and his fourth, sixth, and seventh claims for relief remain live claims, as Defendants did not move to dismiss them. Moreover, Stewart's Motion for Leave to Amend (Dkt. No. 43) is denied, as the PAC fails to cure the deficiencies contained in Stewart's Second Amended Complaint.

IT IS SO ORDERED.

DATED this 24th of April, 2015.

JOHN V. ACOSTA
United States Magistrate Judge